IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CARL P. ASHWORTH                                                                          PLAINTIFF

v.                                Civil No.  13-5132

NURSE RHONDA BRADLEY,
Washington County Detention Center;
and DR. HOWARD, Washington
County Detention Center                                                                   DEFENDANTS

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis.*

The Plaintiff is currently incarcerated in the North Central Unit of the Arkansas Department of Correction (ADC) in Calico Rock, Arkansas.  At the times relevant to this case, the Plaintiff was incarcerated in the Washington County Detention Center (WCDC) in Fayetteville, Arkansas.  Plaintiff maintains his constitutional rights were violated when Defendants exhibited deliberate indifference to his serious medical needs.

Defendants filed a Motion for Summary Judgment (Doc. 47).  On October 14, 2015, a hearing was held to allow the Plaintiff to orally respond to the Motion for Summary Judgment (Doc. 47).  Plaintiff appeared by video conference.  At the conclusion of the hearing, the Summary Judgment Motion (Doc. 47) was taken under advisement pending preparation of this Report and Recommendation.

-1-

## I. Background

Plaintiff was booked into the WCDC on April 1, 2013. Doc. 49-2 at pg. 4.[1] He remained incarcerated there until July 25, 2013, when he was transferred to the ADC. Doc. 49-2 at pgs. 45 & 57.

In 2011, Plaintiff was seen at the University of Arkansas for Medical Sciences (UAMS) and diagnosed with epididymitis which is an inflamation of the epididymis.[2] The epididymis is "[a]n elongated structure connected to the posterior surface of the testis . . . [which] transports, stores, and matures sperms between testis and ductus deferens.[3]" The ductus deferens is the "secretory duct of the testicle.[4]"

At the UAMS, Plaintiff testified an ultrasound was performed, he was prescribed antibiotics, either Cephalexin or Ciprofloxacin, and he believed he was prescribed Ibuprofen for the pain. Plaintiff testified that the medication did not help. Plaintiff was seen at the UAMS a "couple of times" in the years 2011 to 2013.

Plaintiff submitted his first medical request at the WCDC on April 5, 2013. He asked to see the nurse so he could explain that he had a cyst on his left testicle. Doc. 49-2 at pg. 58. On April 9, 2013, Plaintiff was seen by Dr. Mullins who examined the Plaintiff. Plaintiff testified that it was Dr. Mullins' opinion, based on his forty-two years of practice, that Plaintiff

---

[1] The pages of Defendants exhibits are not numbered. The Court will therefore refer to the Document Number and the CM/ECF page number rather than the exhibit number.

[2] http://www.medilexicon.com/medicaldictionary.php?t=29731 (accessed November 3, 2015).

[3] http://www.medilexicon.com/medicaldictionary.php?t=29727 (accessed November 3, 2015).

[4] http://www.medilexicon.com/medicaldictionary.php?t=26954 (accessed November 3, 2015).

did not have epididymitis. Doc. 49-2 at pg. 24. Dr. Mullins prescribed an antibiotic, Cephalexin, for ten days. *Id.*

Plaintiff testified that he took the medication for a week or a week and a half but not exactly as it was prescribed. Plaintiff did not feel the medication was helping and in fact he believed the swelling had increased so he quit taking it and filed a grievance. *See* Doc. 49-2 at pg. 9. In response, Plaintiff was added to the list to see the doctor.

Plaintiff was seen by Dr. Mullins on April 30, 2015, for complaints of pain in his scrotum. *See* Doc. 49-2 at pg. 204. Plaintiff testified that he told Dr. Mullins that he did not agree with his judgment. Dr. Mullins decided to refer the Plaintiff to a urologist and prescribed Plaintiff the same antibiotics as before. According to Plaintiff, Dr. Mullins refused to look at the Plaintiff's medical records. Plaintiff felt that if Dr. Mullins would have reviewed the medical records he would have done something differently.

On April 28, 2013, Plaintiff was given a thirty day prescription of Ibuprofen. Doc. 49-2 at pg. 10. On May 13, 2013, Plaintiff was given a prescription of Aleve for thirty days. *Id.* On May 14, 2013, Plaintiff was given a prescription for Cephalexin for ten days. Doc. 49-2 at pg. 11. On May 28, 2013, Plaintiff was given a prescription of Aleve for thirty days. *Id.* at pg. 16.

Plaintiff testified he took the medication prescribed by Dr. Mullins but not as ordered. Each time he took a pill, Plaintiff testified it was recorded in a medication log. *See e.g.,* Doc. 49-2 at pg. 27. After the April 30, 2013, appointment with Dr. Mullins, Plaintiff testified he continued to complain of pain and swelling. If Nurse Bradley was in the pod, he would verbally complain to her.

On May 24, 2015, Plaintiff submitted a request asking why it was taking so long for him to see the urologist. Doc. 49-2 at pg. 63. Nurse Bradley responded that she had requested an appointment and faxed Plaintiff's information to the Urology Clinic. *Id.* Plaintiff was told the Urology Clinic would phone back with an appointment. *Id.* Plaintiff submitted another request on May 27, 2013, again complaining of the delay and questioning why it was taking so long. *Id.* During the delay, Plaintiff testified his pain and inflamation had worsened. By affidavit, Nurse Bradley states that in her experience it is not uncommon for it to take 30 to 45 days from the date of referral to the date of the appointment. Doc. 49-4 at ¶ h.

On June 10, 2015, Plaintiff was seen at Ozark Urology by Dr. M. Adam Childs. Doc. 49-7. Plaintiff was diagnosed with "likely chronic epididymitis." *Id.* at pg. 5. He was prescribed an antibiotic, Cipro, for two months, continued on Ibuprofen for thirty days, and advised to use a scrotal support. *Id.* A two month follow-up appointment was to be scheduled. *Id. See also* Doc. 49-2 at pg. 16.

Dr. Childs also ordered a scrotal ultrasound. Doc. 49-4 at ¶ m. On June 17, 2013, Plaintiff was transported to Washington Regional Medical Center for the ultrasound. *Id.* at ¶ p.

According to Plaintiff, he was never prescribed an antibiotic that helped. The pain medication eased his pain "a little." While he was at the WCDC, there were times when he refused the medication because he did not believe it was helping. On the medication logs, Plaintiff testified his initials CA were written when he accepted the medication and the letter R was written when he refused the medication.

AO72A
(Rev. 8/82)

Plaintiff was moved to another cell block and for the first five days his medication was not on the cart. Plaintiff felt like the Defendants were waiting for him to be sentenced so his medical needs could be "pushed off" on the ADC.

Plaintiff testified he complained of pain repeatedly. In his opinion, Nurse Bradley was not doing her job correctly. Plaintiff also felt like Nurse Bradley took too long to get his appointment set up with a urologist. He doesn't believe it should have taken her thirty days to schedule an appointment.

With respect to the liability of Washington County, Plaintiff testified the County allows the nurses and doctors to do what they want. Plaintiff states he made multiple complaints about Nurse Bradley's conduct but nothing was done.

## II.  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III.  Discussion

"Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989)(*citing Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The Eighth Amendment deliberate indifference standard applies to all denial of medical care claims. *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012). The deliberate indifference standard has both an objective and a subjective component. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). A plaintiff must demonstrate that (1) he suffered an objectively serious medical need, and (2) the defendant actually knew of the medical need but, subjectively, was deliberately indifferent to it. *Grayson v. Ross,* 454 F.3d 802, 808-09 (8th Cir. 2006).

**(A).  Dr. Howard**

It was clear from the testimony and evidence presented that Dr. Howard was not the doctor who treated the Plaintiff for testicular pain.  No claim has been stated against him.

**(B).  Nurse Bradley**

The gist of Plaintiff's claim against Nurse Bradley is that she did not take his condition seriously enough and failed to make an appointment with the urologist as quickly as the Plaintiff would have liked. The question is whether there is a genuine issue of material fact as to whether Nurse Bradley exhibited deliberate indifference to Plaintiff's serious medical needs.

To constitute deliberate indifference, "[a]n inmate must demonstrate that a prison [nurse's] actions were so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." Id. Intentionally denying or delaying access to medical care may constitute deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

There is no genuine issue of material fact as to whether Nurse Bradley exhibited deliberate indifference to Plaintiff's serious medical needs. During his relatively short incarceration at the WCDC, Plaintiff was seen by the nurse twelve times, by the doctors seven times, by a dentist twice, and by a urologist on one occasion. He was prescribed medication numerous times and the medication was obtained and available to the Plaintiff as ordered. There is no evidence suggesting Nurse Bradley delayed medical care for the Plaintiff.

### IV. Conclusion

For the reasons stated, I recommend that the Defendants' Motion for Summary Judgment (Doc. 47) be **GRANTED** and this case dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 9th day of November, 2015.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

AO72A (Rev. 8/82)